UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

D.A. MCLAUGHLIN,                                    :

                        Plaintiff,                   :

                                                              **OPINION AND ORDER**
        -against-                                    :

                                                              04 Civ. 1270 (FM)
NEW YORK CITY BOARD OF                     :
EDUCATION and JOY DALEY,

                                                     :

                        Defendants.
---------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

        Plaintiff Don Alan McLaughlin ("McLaughlin") brings this pro se

employment discrimination action against his former employer, the New York City Board

of Education ("BOE"), and Joy Daley ("Daley"), the principal of the school where he

taught (together, the "Defendants").  McLaughlin alleges discrimination on the basis of

his race, color, sex, national origin, and religion in violation of Title VII of the Civil

Rights Act of 1964 ("Title VII").  He also contends that the Defendants failed to

accommodate his religious practices and beliefs.

        Following the close of discovery, the Defendants moved for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Docket No. 34).

Subsequently, on August 3, 2007, the parties consented to my exercise of jurisdiction over

this case for all purposes in accordance with 28 U.S.C. § 636(c).  (Docket No. 38).

Pursuant to that authority, the Defendants' motion for summary judgment is granted for the reasons set forth below.

II.     Facts

The Defendants have served and filed the statement of undisputed facts required by Local Civil Rule 56.1 ("Rule 56.1") and the notice to pro se litigants required by Local Civil Rule 56.2.  (Docket Nos. 21, 34).  Further, Chief Judge Kimba Wood, to whom the case then was assigned, provided McLaughlin with an Order detailing what his response to a Rule 56.1 statement must contain.  (Docket No. 19).  Despite what appears to have been a good-faith effort, McLaughlin has not properly complied with Rule 56.1 and Judge Wood's Order.  For example, McLaughlin has failed to admit or deny facts in a "correspondingly numbered paragraph responding to each numbered paragraph" of the Defendants' statement and repeatedly makes assertions that lack citations to admissible evidence.  (See Docket No. 42) (Pl.'s Local R. 56.1 Stmt. of Undisputed Material Facts ("Pl.'s Stmt.")).[1]  Thus, to the extent that McLaughlin's statement does not dispute the Defendants' factual assertions or relies on inadmissible evidence, the facts set forth in the

---

[1]     The pages of McLaughlin's Rule 56.1 Statement are not numbered.  For ease of reference, I have inserted page numbers on the original in the court file.

Defendants' Rule 56.1 Statement must be deemed admitted.[2]  See, e.g., Giannullo v. City

of N.Y., 322 F.3d 139, 140 (2d Cir. 2003).

As the Second Circuit has cautioned, however, a movant may not be

granted summary judgment simply because its motion is not properly opposed.  Vt. Teddy

Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  Thus, the "Court

may not rely solely on the statement of undisputed facts contained in the moving party's

Rule 56.1 Statement; it also must be satisfied that the moving party's assertions are

supported by the record."  Allen v. City of N.Y., 480 F. Supp. 2d 689, 703 (S.D.N.Y.

2007).  Viewed in the light most favorable to McLaughlin, that record establishes as

follows:

A.    McLaughlin's Protected Status

McLaughlin is a male of Native-American, African-American, and

European extraction.  He considers himself a Native-American and practices the religion

of Islam.  (Ex. A ("Dep.") at 10-11, 16).[3]  He identifies his color as "dark brown" and his

national origin as American.  (Id. at 15-16).

---

[2]      The Defendants also contend that McLaughlin's statement is unsworn.  (Defs.'
Reply Mem. at 2).  However, McLaughlin's signature on the statement is preceded by a
declaration, "under penalty of perjury, that the for[e]going is true and correct."  (Pl.'s Stmt. at 8).
His statement therefore carries the same "force and effect" as if it were sworn.  See 28 U.S.C.
§ 1746.

[3]      "Ex." refers to the exhibits annexed to the Declaration of Assistant Corporation
Counsel Ivan A. Mendez, Jr., dated May 18, 2007.  (Docket No. 21).  "Dep." refers to the
deposition of McLaughlin, taken on March 1, 2005.

B.    McLaughlin's Employment with the BOE

1.    Hiring

Daley is an African-American woman of Jamaican national origin.  At all times relevant to this case, she was the Principal of the Lorraine Hansberry Academy, a New York City public school in the Bronx.  The school was part of the "Chancellor's District" which consists of "lower achieving schools."  (See Dep. at 35; Exs. B, C, CC at 5).  Daley interviewed McLaughlin in October 2000 and recommended to the District that he be hired as an Additional Teacher Reserve ("ATR").  An ATR is similar to a substitute teacher and may be assigned to "to teach any subject according to the needs of the school."[4]  (Dep. at 34-37; Exs. B, CC at 5).

2.    2000 to 2001 School Year

As an ATR, McLaughlin taught seventh-grade English during the 2000 to 2001 school year.  (Dep. at 37).  On April 24, 2001, Assistant Principal Maria Matos ("Matos") informally observed his class.  (Ex. D ).  On May 7, 2001, Matos sent McLaughlin an evaluation letter.  (Id.).  That letter critiqued McLaughlin's classroom performance and concluded that he "would have received an Unsatisfactory rating" had the observation been "formal."  (Id. at 3).  Matos also provided constructive criticism

---

[4]    Although he testified that he was unsure of the position for which he initially was hired, McLaughlin speculates that he was not an ATR.  (Dep. at 37).  The only evidence that he cites to support this belief is his hiring form, which allegedly contains "white out" adjacent to the "ATR" notation.  (See Pl.'s Stmt. ¶ 1(a); Ex. B).  There is no evidence that this alleged alteration relates in any way to the claims in this litigation.  Furthermore, McLaughlin admits that his job entailed going "from class to class," as an ATR would.  (Dep. at 89).

intended to improve the quality of McLaughlin's teaching, such as encouraging him to plan collaborative activities, post standards for his lessons, and have a lesson plan. (Id. at 2). McLaughlin initially refused to countersign this letter to acknowledge that he had received it. He later relented and signed the letter on June 5, 2001. (Ex. D at 3).[5]

On May 9, 2001, Daley observed McLaughlin's class. (Ex. E). In a letter to McLaughlin dated May 15, 2001, Daley complained that he had "not [been] involved with any form of instruction" during her visit and that "[n]othing was taught." (Id. at 1). She also noted that she asked for McLaughlin's lesson plan, which he did not timely produce. (Id.). Daley cautioned McLaughlin that her letter constituted an "official warning . . . to plan and prepare" for all his classes. (Id.). Daley offered to assist McLaughlin if he needed any further help. (Id. at 2).

On June 6, 2001, after a second visit to McLaughlin's classroom, Daley rated him "Satisfactory" in an observation report.[6] (Ex. F at 1). In the report, Daley explained that McLaughlin's lesson was "satisfactory because [he] engaged the students in several elements of a successful lesson." (Id. at 3). The report contained numerous recommendations for improvement, including suggestions that McLaughlin encourage

---

[5]     Unless otherwise indicated, McLaughlin signed every subsequent letter and performance review.

[6]     Under the BOE rating system, there were only two possible ratings: "satisfactory" or "unsatisfactory." (Defs.' Local R. 56.1 Stmt. of Undisputed Material Facts ("Defs.' Stmt.") ¶ 16).

students to raise their hands, write larger on chart paper so students could read his writing, and provide enough copies of practice work for the students.  (Id.).

Two days later, on June 8, 2001, Assistant Principal William Williams ("Williams"), an African-American male, observed McLaughlin.  (Ex. G; Pl.'s Proposed Local R. 56.1 Counter-Stmt. of Undisputed Facts ("Pl.'s Counter-Stmt.") ¶ 8).  In his subsequent letter to McLaughlin, dated June 13, 2001, Williams was critical of McLaughlin's teaching performance.  (Ex. G).  He noted that McLaughlin "made no attempt to improve on [the] classroom environment," that McLaughlin's lesson plan was undated, that the "objective on the board did not follow the lesson plan," and that students had "too much unfinished work."  (Id.).  Williams noted that he was "very concerned with the level of instruction and learning" in McLaughlin's class, and he urged McLaughlin to seek his assistance.  (Id.).

Despite three negative reviews during the 2000 to 2001 school year, McLaughlin earned a "satisfactory" annual performance rating.  (Ex. H).  His annual evaluation further indicated, however, that McLaughlin had been late ten times and absent another eleven days during the school year.  (Id.).  According to Daley, the only reason McLaughlin did not receive an "unsatisfactory" rating was the lack of two "formal" observations in his file.  (Ex. CC at 6-7).

3.    2001 to 2002 School Year

The day before class assignments were to be made for the 2001 to 2002

school year, McLaughlin was reassigned to teach third grade as a language arts

enrichment teacher.[7]  (Dep. at 57-58).  Daley observed him for the first time that year on

November 20, 2001, and wrote a letter to McLaughlin one week later.  (Ex. K).  In her

letter, Daley stated that McLaughlin's classroom was disorganized and chaotic and that

there "was no evidence of teaching and learning."  (Id. at 1).  Daley further noted that

McLaughlin was not supporting what the home room teacher was teaching, as enrichment

teachers were required to do.  (Id.).  Based on her observations, Daley concluded that

McLaughlin had failed to "establish and maintain the order and discipline . . . necessary

to instruct students effectively."  (Id. at 2).  She directed McLaughlin to meet with her

and another teacher to discuss effective management techniques and cautioned him that a

continued failure "to maintain order and discipline in [his] classroom may be grounds for

further disciplinary action, including an unsatisfactory rating."[8]  (Id.).

Two days later, on November 30, 2001, Daley again observed McLaughlin.

(Ex. L).  In a letter dated February 1, 2002, which followed a meeting with McLaughlin

and his union representative, Daley noted that McLaughlin had been teaching a topic that

---

[7]    McLaughlin contends that this late assignment violated his collective bargaining
agreement ("CBA").  (See Pl.'s Counter-Stmt. ¶ 14).

[8]    Previously, when he met with Daley and his union representative, McLaughlin
conceded that his students would not listen to him.  (Ex. K at 1).

had nothing to do with his written lesson plan.  (Id.).  She warned McLaughlin "to plan

and prepare for [his] classes by writing current lesson plans" for each class he taught.

(Id.).  She also reminded him that, as an enrichment teacher, he was required to confer

with the home room teachers to determine what topics should be covered.  (Id.).

In a subsequent letter dated January 31, 2002, Daley reprimanded

McLaughlin for his poor attendance and punctuality record.  (Ex. M).  The letter, which

again followed a meeting with McLaughlin and his union representative, noted that

between August and November 2001, McLaughlin had been late twelve times and absent

five times.  Between December 2001 and January 2002, McLaughlin was late an

additional eleven times and absent an additional eight times.  (Id.).  McLaughlin

contended that each lateness and absence was due to illness, but Daley nonetheless

warned him that he was in danger of receiving an "unsatisfactory" rating if he did not

improve his attendance record.  (Id.).

On February 5, 2002, Daley observed McLaughlin together with a

curriculum facilitator.  In a letter dated the same day, Daley mandated five specific

corrective steps that McLaughlin had to pursue.  (Ex. N).  She stated that she would "be

visiting [McLaughlin's] class on an ongoing basis to ensure that [he] receive[d] the

professional development" needed to improve.  (Id. at 2).

On April 15, 2002, Gloria Buckery ("Buckery"), an African-American

woman who was the Brooklyn/Bronx Regional Superintendent, observed McLaughlin's

classroom. (Ex. O; Defs.' Stmt. ¶ 4). In an observation report dated April 24, 2002, Buckery noted three "commendable features" of McLaughlin's lesson, but then itemized more than ten major concerns. (Ex. O at 1-2). Buckery concluded that the lesson she observed was "unsatisfactory" and directed a regional instructional specialist to work with McLaughlin to improve his performance.

On June 5, 2002, Daley again observed McLaughlin; she rated him "Unsatisfactory" in an observation report dated the same day. (Ex. P at 1). Daley complained that there were "no commendable features to the lesson" and that there was "no established routine or consistent pattern of instruction" in McLaughlin's class. (Id. at 2). Daley noted that McLaughlin still was not conferring with the home room teacher to support the topics she was teaching, and directed him to do so. (Id. at 3). After another observation the following day, Daley again found that McLaughlin's performance was unsatisfactory and that it had not improved despite the training he had received throughout the year, including his attendance at seven staff development training sessions. (Id. at 3; Ex. Q).

Finally, on June 14, 2002, McLaughlin received an "unsatisfactory" rating from Daley for his performance throughout the 2001 to 2002 school year. (Ex. S). On the annual performance review form, Daley rated McLaughlin unsatisfactory in every category under the headings "Personal and Professional Qualities" and "Pupil Guidance and Instruction." (Id. at 2). She did not rate him with respect to "Classroom or Shop

Management" or "Participation in School and Community Activities."  (Id.).  In an additional handwritten remark, Daley stated:  "Your attendance and punctuality record far surpass the . . . number of days [allowed.]  Also, your lack of planning, preparation and effective use of strategies to enhance students' development and academic achievement were unsatisfactory."  (Id.).  In a cover letter to McLaughlin, Daley stated that she would recommend a "discontinuance" of his probationary service, i.e., that the superintendent dismiss him.  (Id. at 1).

### 4.  McLaughlin's Dismissal

On June 21, 2002, superintendent Sandra Kase ("Kase") informed McLaughlin that she would be reviewing his performance to decide whether to retain him as a "probationary teacher" and invited him to submit a written statement.  (Ex. T).  Although there is no indication that McLaughlin submitted a response to Kase, he did send Daley a letter, dated June 26, 2002, in which he sought to explain his poor performance.  (Ex. U).  McLaughlin contended that, despite repeated requests, he had not received the third grade curriculum, course objectives, and text until June 2002.  (Id.; Pl.'s Counter-Stmt. ¶ 11).  He also blamed any "deficiency in [his] performance" on "the logistics of the assignment, negligence of the administration and poor school management."  (Ex. U).

Thereafter, on July 21, 2002, Kase sent McLaughlin a letter to "reaffirm" the "discontinuance" of his probationary employment with the BOE. (Ex. V). She reaffirmed that decision again on December 16, 2002. (Ex. W).[9]

### 5.    Work Related Injury

On January 23, 2001, as he was entering the school, McLaughlin was struck in the head by a piece of ice thrown by a student. (Dep. at 55). Thereafter, McLaughlin missed eight weeks of work. (Id. at 56). On February 28, 2001, Daley requested that McLaughlin undergo a medical evaluation of his condition, which took place on March 19, 2001. (Exs. Y, Z). Based on the evaluation, McLaughlin received pay for only five of the eight weeks of school that he missed. (Dep. at 56; Ex. X). A BOE compensation board affirmed that determination on appeal. (Dep. at 54-55).

### 6.    Religious Accommodation

By early May 2001, McLaughlin had requested permission to attend Friday prayer services during the school day.[10] (Ex. CC at 7). Pursuant to Chancellor's Regulation C-606, the BOE grants religious accommodations on a case-by-case basis. (Exs. CC at 8, EE at 2). On December 3, 2001, after determining the proper procedure for handling requests of this type, Daley granted McLaughlin an early release from school on Fridays, except for the second Friday of each month, so he could attend religious

---

[9]     McLaughlin did not sign either the July 21 or December 16 letter.

[10]     McLaughlin contends that he orally requested this religious accommodation as early as November or December 2000. (Dep. at 41).

services.  The request was denied with respect to the second Friday of each month because essential faculty conferences were held that day.  (Exs. CC at 8, EE).  On the days when there were no faculty conferences, McLaughlin was permitted to leave the school between 12:51 and 2:20 p.m. with the released time charged against his personal days.  If he had no such time available, the released time was to be accounted for through payroll deductions.  (Ex. EE).  Further, in accordance with the Chancellor's Regulation, McLaughlin was required to clock in and out on the days that he left during school hours for religious observances.  (Id.).  Although these procedures were formalized on December 3, 2001, Daley previously had permitted McLaughlin to attend prayer sessions on Fridays as early as October 2001.  (Dep. at 64).

C.      Procedural History

McLaughlin filed a charge of discrimination with the EEOC on or about April 18, 2003.  (Ex. GG).  In his charge, McLaughlin checked boxes indicating that the discrimination against him was based on his sex, religion, and national origin.  He also alleged that the Defendants retaliated against him for initially refusing to sign Matos' May 7, 2001, observation letter.  (Id. at 3).  The EEOC issued McLaughlin a right-to-sue letter on October 20, 2003.  (Ex. II).

McLaughlin's pro se complaint in this action is dated January 21, 2004. (Ex. HH).  Although the original complaint stamped by the Pro Se Office of the Court is missing from the official court file, McLaughlin submitted his "Request to Proceed In

<u>Forma</u> <u>Pauperis</u>" on January 22, 2004, which suggests that his complaint must have been received by that date. (Ex. JJ). The Pro Se Office also advises me that it has a record of having received his complaint on January 22, 2004.

In his complaint, McLaughlin no longer claims retaliation, but, in addition to the bases previously set forth in his EEOC charge, now alleges that he was the victim of discrimination based on his race and color. By checking boxes on his form complaint, McLaughlin alleges that the discrimination against him involved a failure to promote him, unequal terms and conditions of employment, "unequal treatment," and the termination of his employment. (Ex. HH at 3). He also contends that Kase's reaffirmance of his discontinuance on December 16, 2002, was the Defendants' last act of discrimination. (<u>See</u> <u>id.</u>).

Following the close of discovery, the Defendants filed their motion for summary judgment on May 22, 2007. (Docket No. 34). McLaughlin submitted his opposition papers on October 1, 2007. (Docket No. 42). The Defendants filed their reply papers on October 12, 2007. (Docket No. 41).

III.  <u>Discussion</u>

   A.  <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In deciding a motion for summary judgment, the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and . . . draw all permissible inferences in favor of that party." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). The Court also must accept as true the non-moving party's evidence, if supported by affidavits or other evidentiary material. See Kulak v. City of N.Y., 88 F.3d 63, 70 (2d Cir. 1996). Assessments of credibility, choosing between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the Court. Fischl, 128 F.3d at 55; see also Fed. R. Civ. P. 56(e) 1963 advisory committee's note. Thus, "[t]he court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried." Fischl, 128 F.3d at 55.

To defeat a motion for summary judgment, the non-moving party cannot simply rely upon allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The Second Circuit has cautioned that summary judgment is often inappropriate in cases where the trier of fact will have to delve into an employer's intent, because intent is an issue as to which direct evidence is rarely available. See, e.g., Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994); Patrick v. LeFevre, 745 F.2d 153, 159 (2d Cir. 1984). However, when an employer has explained its conduct and the plaintiff has offered only conclusory assertions in opposition, summary judgment may be granted. See, e.g., Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all [discrimination] cases.").

Although the same summary judgment rules apply to a party proceeding pro se, special latitude is appropriate to ensure that a meritorious claim is not foreclosed simply because the papers submitted in opposition to the motion are inartfully worded. See Morris v. Citibank, N.A., No. 97 Civ. 2127, 1998 WL 386175, at *2 (S.D.N.Y. July 8, 1998); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (pro se complaint should be held to less stringent standard than formal pleadings drafted by counsel); McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (pleadings should be read liberally and interpreted to "raise the strongest arguments that they suggest") (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). By the same token, however, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a

15

motion for summary judgment." Odor v. Keane, No. 95 Civ. 9941, 1997 WL 576088, at

*3 (S.D.N.Y. Sept. 17, 1997) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.

1991)).

B.     Timeliness of Claim

A Title VII complaint must be filed not more than ninety days after a

plaintiff's actual receipt of an EEOC right-to-sue letter. Cornell v. Robinson, 23 F.3d

694, 706 (2d Cir. 1994) (citing 42 U.S.C. § 2000e-5(f)(1)). The complaint of a pro se

plaintiff proceeding in forma pauperis is considered filed as of the date it is received by

the Pro Se Office. Toliver v. County of Sullivan, 841 F.2d 41, 42 (2d Cir. 1988). Here,

as noted above, the Court's records confirm that the Pro Se Office received McLaughlin's

complaint on January 22, 2004.

The parties disagree as to the date that McLaughlin received his right-to-sue

letter. Courts usually presume that an official notice from a federal agency was mailed on

the date set forth thereon, in this case October 20, 2003. See Sherlock v. Montefiore

Med. Ctr., 84 F.3d 522, 526 (2d Cir. 1996). The Defendants urge the Court to apply the

further presumption that the EEOC right-to-sue letter was received three days after its

mailing, i.e., on October 23, 2003. See Williams v. Salvation Army, 108 F. Supp. 2d 303,

307 (S.D.N.Y. 2000); Brooks v. N.Y.C. Hous. Auth., No. 98 Civ. 5016, 1999 WL

395387, at *2 (S.D.N.Y. June 15, 1999); see also Fed. R. Civ. P. 6(d) (adding three days

to any prescribed period when notice is served by mail). If so, the action would be time-

barred because the ninety-day period expired on January 21, 2004, and the Pro Se Office first received the complaint on January 22, 2004, the following day.

The "three day receipt rule" is a rebuttable presumption. Sherlock, 84 F.3d at 526. In his complaint, McLaughlin states that he received the right-to-sue letter on October 28, 2003. (See Ex. HH at 5). Although the complaint is not sworn, a five-day delay in the receipt of a mailing in the New York City area is not an uncommon experience. Accordingly, I will assume that McLaughlin's commencement of this suit was timely.

The fact that this suit may be timely does not mean that all of McLaughlin's claims may be considered regardless of their age. To pursue a Title VII claim in federal court, an aggrieved employee must first have exhausted his administrative remedies by presenting his complaint to the EEOC. See Carela v. N.Y.C. Parks & Recreation Dep't, No. 98 Civ. 2753, 2005 WL 2105546, at *6 (S.D.N.Y. Sept. 1, 2005). The charge usually must be filed with the EEOC within 180 days of the discriminatory act; in states such as New York, which have their own anti-discrimination agency, however, the deadline is extended to 300 days. Id. at *6 n.4; see also Lennon v. New York City, 392 F. Supp. 2d 630, 638 (S.D.N.Y. 2005). Acts which occur more than 300 days before the EEOC filing consequently are time-barred unless they are part of a continuing unlawful practice that extends into the 300-day look-back period. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-18 (2002). In this case, McLaughlin filed his EEOC charge on April 18,

2003. (Ex. GG). McLaughlin consequently cannot seek relief on the basis of any acts that occurred prior to June 22, 2002, unless they continued beyond that date.

C.     Subject Matter Jurisdiction as to the
       Race, Color, and Failure-to-Promote Claims

The Defendants also contend that the Court lacks subject matter jurisdiction over McLaughlin's failure-to-promote and race and color discrimination claims because they were not part of his EEOC charge. See Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003). Claims not raised in an EEOC charge may nevertheless be heard in federal court if they are "reasonably related" to the claims originally filed with the agency. See Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993), superceded by statute on other grounds as recognized in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). There are only three situations in which courts have held that claims not expressly set forth in an EEOC charge are reasonably related thereto. Id. at 1402. The first exception arises when the claim was "loosely pleaded" in the EEOC charge and "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. (quoting Smith v. Am. President Lines, Ltd., 571 F.2d 102, 107 n.10 (2d Cir. 1978)). The second exception applies to cases in which the plaintiff alleges further retaliatory discrimination resulting from the filing of an EEOC charge. Id. The third exception applies when "a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." Id. at 1402-03. It

18

is undisputed that the Defendants terminated McLaughlin on June 21, 2002.  (See Ex. T).

Since there is no evidence that the Defendants retaliated or discriminated against

McLaughlin after that date, only the first of the Butts exceptions – relating to claims

loosely pleaded –  is potentially applicable here.

In determining whether a claim has been "loosely pleaded" before the

EEOC, the focus of the inquiry "should be 'on the factual allegations made in the [EEOC]

charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"

Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (quoting Freeman v. Oakland Unified

Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002)) (brackets in original).  The "central

question is whether the complaint filed with the EEOC gave that agency adequate notice

to investigate discrimination on both bases."  Williams v. N.Y.C. Hous. Auth., 458 F.3d

67, 70 (2d Cir. 2006) (internal quotation marks omitted).

In his EEOC charge, McLaughlin complained about national origin

discrimination, but not race or color discrimination.  Because an "assertion of racial bias

is conceptually distinct from a claim of discrimination on the basis of national origin,

raising a national origin claim before the EEOC does not automatically suffice to alert the

agency to investigate incidences of racial discrimination."  Deravin, 335 F.3d at 201

(internal quotation marks omitted).  However, "courts have also recognized that race and

national origin discrimination claims may substantially overlap or even be

indistinguishable depending on the specific facts of a case."  Id.

In his EEOC charge, McLaughlin claimed, in part, that he was dismissed because of his "nationality." (Ex. GG at 3). He further contended that his national origin is American, and that Daley discriminated against him on that basis because she favored teachers from Jamaica. (Dep. at 15, 51). Thus, McLaughlin's national origin claim alleged that he was treated less favorably than Jamaican teachers, not that he was treated less favorably than non-Black teachers. His race and color claims therefore have nothing in common with his national origin claim. Indeed, there is no mention whatsoever of color or race in his EEOC charge. (Ex. GG).[11] There consequently is nothing that would have alerted the agency to investigate a race or color discrimination claim. Although the Defendants are therefore entitled to the dismissal of those claims on jurisdictional grounds, as set forth below, McLaughlin would fare no better if I were to consider the merits of those claims.

The Defendants also contend that McLaughlin's failure-to-promote claim, which is not alleged in his EEOC charge, is not reasonably related to his discrimination claim. McLaughlin's failure-to-promote claim is based upon the fact that he was not promoted to a home room teacher position after his first year. (Dep. at 90). In that connection, McLaughlin stated in his EEOC charge that he "informed the principal" that his area of expertise was at the "secondary school level" when he found out he was

_____

[11] On the EEOC Form, there is a section entitled "Cause of Discrimination Based On." (Ex. GG). In that section, McLaughlin checked off the boxes for "National Origin," "Sex," "Religion," and "Retaliation," but failed to check off the "Race" and "Color" boxes. (Id.).

assigned to third grade in his second year of teaching, yet she refused to reassign him. This allegation arguably provided notice to the EEOC that McLaughlin was contending that the Defendants' failure to appoint him a home room teacher was discriminatory. Accordingly, McLaughlin is entitled to have his failure-to-promote claim considered on the merits because it was loosely pleaded before the EEOC.

D.     Title VII Claims Against Daley

It is settled law that an individual, including a supervisor, cannot be held personally liable under Title VII. Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds, Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 665-66 (S.D.N.Y. 2007). McLaughlin's complaint therefore must be dismissed insofar as he seeks damages against Daley.

E.     Title VII Claims Against the BOE

1.     Disparate Treatment

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

"To withstand a motion for summary judgment, a discrimination plaintiff must withstand the three-part burden-shifting laid out by <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973)." <u>McPherson v. N.Y.C. Dep't of Educ.</u>, 457 F.3d 211, 215 (2d Cir. 2006). Under that rubric, the plaintiff must satisfy an initial burden of "proving by a preponderance of the evidence a prima facie case of discrimination." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). To establish a <u>prima facie</u> case, an employee must show that: (a) he was within the protected class; (b) his job performance was satisfactory; (c) he was subjected to an adverse employment decision or discharge; and (d) the adverse action occurred under circumstances giving rise to an inference of discrimination. <u>See</u> <u>Demoret v. Zegarelli</u>, 451 F.3d 140, 151 (2d Cir. 2006); <u>Stratton v. Dep't for the Aging</u>, 132 F.3d 869, 879 (2d Cir. 1997).

Once the plaintiff makes out a <u>prima facie</u> case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." <u>Stratton</u>, 132 F.3d at 879. The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." <u>Fisher v. Vassar Coll.</u>, 114 F.3d 1332, 1335-36 (2d Cir. 1997) (<u>en banc</u>).

Finally, if the defendant provides a nondiscriminatory rationale for its conduct, the rebuttable presumption drops out of the case. <u>St. Mary's Honor Ctr. v.</u>

22

Hicks, 509 U.S. 502, 510-11 (1993).  The burden then rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual, but also that the defendant discriminated against the plaintiff.  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 93-94 (2d Cir. 2001).  In other words, the burden shifts back to the plaintiff to prove that "discrimination was the real reason for the employment action."  Graham v. LIRR, 230 F.3d 34, 38 (2d Cir. 2000).

In its en banc decision in Fisher, 114 F.3d at 1338, the Second Circuit indicated that an explanation by the employer which is pretextual "is not always sufficient to sustain an ultimate finding of intentional discrimination."  This holding, however, was called into doubt by the Supreme Court's subsequent decision in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).  In James v. N.Y. Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000), the Second Circuit sought to harmonize Fisher with Reeves. As Judge Leval summarized the applicable case law, "once a minimal prima facie case is proved and the employer's nondiscriminatory explanation has been given, the McDonnell Douglas presumptions disappear from the case, and the governing standard is simply whether the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred."  James, 233 F.3d at 156.  This requires a case-by-case analysis of the evidence "to determine whether it reasonably supports an inference of the facts plaintiff must prove – particularly discrimination."  Id. at 157.  Stated somewhat differently, the court must "examin[e] the entire record to determine whether the plaintiff

23

could satisfy his 'ultimate burden of persuading the trier of fact that the defendant

intentionally discriminated against the plaintiff.'" Uddin v. New York City, Nos. 99 Civ.

5843 & 00 Civ. 3417, 2001 WL 15694, at *3 (S.D.N.Y. Jan. 8, 2001) (quoting Schnabel

v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000) (in turn, quoting Reeves, 530 U.S. at 143)).

a.      Prima Facie Case

McLaughlin plainly meets two of the four required elements of a prima

facie Title VII discrimination claim since he is a "dark brown" Native-American and

African-American male who practices Islam and suffered an adverse employment action

when he was terminated.[12]  To make out a prima facie case, however, McLaughlin also

must show that his job performance was satisfactory and that his termination occurred

under circumstances giving rise to an inference of discrimination.  McLaughlin is not able

to make the second of these required showings here.

i .      Satisfactory Job Performance

To establish the satisfactory job performance element of his prima facie

case, McLaughlin "need not demonstrate that his performance was flawless or superior."

De la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs., 82 F.3d 16, 20 (2d Cir.

---

[12]      McLaughlin also alleges disparate treatment claims related to "unequal terms and conditions" of employment and "unequal treatment," claiming, for example, that he was criticized unfairly and not assisted in response to his appeals for aid.  (See Ex. HH).  These claims fail because (a) the actions taken do not constitute "adverse employment decisions," see Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (defining an adverse employment decision as a "a materially adverse change in the terms and conditions of employment"), and (b) there is no evidence that any of the actions occurred under circumstances giving rise to an inference of discrimination.

1996).  "Rather, he need only demonstrate that he possesses the basic skills necessary" to perform the job.  Id. (internal quotation marks omitted).  This is a "de minimis burden at the prima facie stage."  Murray v. Visiting Nurse Servs. of N.Y., No. 05 Civ. 5462, 2007 WL 3254908, at *8 n.6 (S.D.N.Y. Oct. 31, 2007) (citing Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005)).  Indeed, when an employer has already hired an employee, "the employer itself has already expressed a belief that she is minimally qualified."  Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001).  Although an employer's "dissatisfaction with even a qualified employee's performance may . . . ultimately provide a legitimate, non-discriminatory reason for the employer's adverse action," "the qualification prong . . . cannot be transformed into a requirement that the plaintiff anticipate and disprove an employer's explanation that inadequate ability or performance justified the job action at issue."  Id. at 696-97.

McLaughlin's evidence of his satisfactory job performance is sufficient to meet his de minimis burden.  First, the BOE obviously considered McLaughlin qualified to serve as an ATR when it hired him only a few years before his eventual dismissal.  (See Ex. B).  Second, both the Education Department of the State of New York and the BOE certified McLaughlin to teach social studies.  (Id.).  Despite his numerous negative performance evaluations, McLaughlin also received a "satisfactory" rating from Daley in an observation report dated June 7, 2001, and at the end of his first year.  (Exs. F, H).

These facts are more than sufficient to meet McLaughlin's minimal burden of showing that he possessed the skills necessary to perform his job.

### ii.    Inference of Discrimination

The final element of McLaughlin's prima facie case requires him to establish that "the employer's adverse employment decision occurred under circumstances that raise an inference of discrimination." Belfi v. Prendergast, 191 F.3d 129, 140 (2d Cir. 1999). In an effort to do so, McLaughlin has submitted extensive papers, but his allegations of discrimination are, without exception, conclusory and unsupported by record evidence. For example, McLaughlin alleges that Daley was "out to get" him, that "most of the men of color . . . don't last too long" at Daley's school, that Daley did not "establish a good rapport with black males," that she discontinued McLaughlin "without any basis," and that "male teachers from [Jamaica were treated better than] brothers from America." He further contends that he was discriminated against "by not being given adequate time to prepare for . . . classes" and because of "anti-Muslim, anti-Islam" sentiment after September 11, 2001. (Dep. at 45, 49-51, 101; Ex. GG at 3; Pl.'s Stmt. ¶ 2). But McLaughlin offers no factual support for any of these assertions. His conclusory statements are not sufficient to create a genuine issue of material fact regarding the Defendants' motivation for his termination. See, e.g., Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact.").

McLaughlin also contends that the failure to invite him to third grade staff development meetings gives rise to an inference of discrimination. (See Pl.'s Stmt. ¶ 1(r)). The evidence establishes, however, that McLaughlin was not required to attend these meetings. (Ex. CC at 5). Moreover, even if he had been required to attend the meetings, the mere fact that he was not invited would not support an inference of discrimination based on an improper criterion such as religion or national origin. For similar reasons, no inference of discrimination arises from the fact that the BOE paid McLaughlin for only five of the eight weeks he was out of work after he was injured on the job. Indeed, the decision not to pay McLaughlin for the other weeks was based on a medical evaluation of McLaughlin and was affirmed on appeal. (Dep. at 54-56; Exs. X-BB).

It also is undisputed that Daley was the person who both hired McLaughlin and later gave him unsatisfactory ratings and recommended his dismissal. "When the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire.'" Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000) (quoting Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)). Indeed, because McLaughlin's hiring and firing occurred over a period of less than two years, the BOE is entitled to an inference that Daley did not act with an impermissible motivation. See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993) (inferring that there

was no discriminatory motive when an individual who approved a pay increase for the plaintiff fired him less than two years later); <u>Lowe v. J.B. Hunt Transp., Inc.</u>, 963 F.2d 173, 174-75 (8th Cir. 1992) (applying same actor inference when the same individual both hired and fired plaintiff within a two year period). McLaughlin has not adduced any evidence which would overcome this inference.

In short, the circumstances surrounding McLaughlin's termination do not give rise to an inference of discrimination. McLaughlin therefore has failed to make out one of the required elements of a <u>prima facie</u> case of discrimination.

b.    <u>Legitimate Nondiscriminatory Reason and Pretext</u>

Even if McLaughlin's <u>prima facie</u> showing were deemed adequate, the Defendants have proffered McLaughlin's poor performance as a legitimate nondiscriminatory reason for his termination. This justification finds ample support in the record. In less than two years, McLaughlin received a total of ten negative performance evaluations from four supervisors and also managed to compile an abysmal attendance and punctuality record. (<u>See</u> Exs. D-V). In his papers, McLaughlin does not seriously dispute that his performance was substandard. Instead, he blames his shortcomings on others, stating that "[a]ny deficiency" in his "performance was due to the logistics of the assignment" and the "negligence of the administration" (Ex. U); that "[n]o one prepared [him] to teach" his class and that the poor behavior of his students resulted from Daley "los[ing] control of the school" (Pl.'s Stmt. ¶¶ 1(d), 1(q)); and that he was assigned to

teach third grade in violation of the CBA and was not timely furnished with a curriculum, the course objectives, or a text (id. ¶¶ 2-3; Pl.'s Counter-Stmt. ¶¶ 11, 13-14).  Assuming that all of these assertions are correct, McLaughlin still has not produced any evidence that the Defendants' actions or failures to act were based on discriminatory animus. Indeed, apart from his conclusory assertions, the only "evidence" that McLaughlin has proffered in this regard is that some of his supervisors had different protected characteristics than him.  This is not nearly enough to establish pretext.  See Norton v. Sam's Club, 145 F.3d 114, 119 (2d Cir. 1998).

McLaughlin's disparate treatment claim therefore fails as a matter of law.

2.    Failure to Promote

To establish a prima facie case of discrimination based on a failure to promote, a plaintiff must demonstrate that:  (a) he is a member of a protected class; (b) he applied and was qualified for a job for which the employer was seeking applicants; (c) he was rejected for the position; and (d) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications.  Petrosino v. Bell Atl., 385 F.3d 210, 226 (2d Cir. 2004).  McLaughlin's failure-to-promote claim is premised on the fact that he was not promoted to a home room teacher position after his first year. (Dep. at 90).  However, McLaughlin has not produced any evidence that such a vacancy existed, that he applied for the position, or that he was rejected after he applied while the position remained available.  Therefore, this claim too fails as a matter of law.

3.    Religious Accommodation

McLaughlin's last claim is that the BOE failed to make reasonable accommodations for his religious beliefs. To make out a prima facie case of religious discrimination, an employee must show that he (a) held "a bona fide religious belief conflicting with an employment requirement," (b) informed his employer of this belief, and (c) was "disciplined for failure to comply with the conflicting employment requirement." Baker v. Home Depot, 445 F.3d 541, 546 (2d Cir. 2006) (quoting Knight v. Conn. Dep't of Pub. Health, 275 F.3d 156, 167 (2d Cir. 2001)). Once a prima facie case is established, the employer "must offer [the employee] a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." Id. (quoting Cosme v. Henderson, 287 F.3d 152, 158 (2d Cir. 2002)). If a reasonable accommodation was offered to the employee, the employer prevails. Cosme, 287 F.3d at 158.

McLaughlin argues that he was denied a reasonable accommodation so that he could attend Friday prayer services during the latter part of the school day. It is undisputed, however, that the BOE made appropriate arrangements by at least December 3, 2001. Accordingly, because McLaughlin's religious discrimination claim necessarily relates to events that occurred more than 300 days before the filing of McLaughlin's EEOC charge, it is time-barred.

Moreover, even if McLaughlin's religious discrimination claim were not time barred the BOE would be entitled to summary judgment. At the outset, McLaughlin has not adduced any evidence that he was disciplined for failing to comply with an employment requirement conflicting with his religion, which is the third required element of a prima facie case. Second, even if he had made a prima facie showing, the BOE granted him a reasonable accommodation. Indeed, it is undisputed that Daley granted McLaughlin an early release from school on Fridays, except for the second Friday of each month, when his presence at faculty conferences was required. Although he was not paid while he was away from school for this purpose, the Supreme Court has held that an employer's granting of leave without pay for religious observances is generally a reasonable accommodation under Title VII. See Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 70 (1986). Therefore, the BOE did what was required of it, and McLaughlin has no viable discrimination claim.

Furthermore, the fact that Daley required McLaughlin to clock in and out when he left for religious services was consistent with the BOE's written requirement that accurate records be kept of any "absences due to accommodation" and the resulting "time balances." (Ex. EE at 3). In his papers, McLaughlin suggests that he nevertheless was discriminated against because other employees were not required to clock out when they left the school premises for "lunch." (Ex. HH at 8). He is noticeably silent as to whether he had to clock out when he merely went to lunch. In any event, when McLaughlin took

religious time, it involved both his lunch period and an additional period. McLaughlin has not alleged, much less shown, that other teachers who took off comparable time were allowed not to clock in and out.

Finally, the fact that there may have been some delay in the granting of McLaughlin's request to leave for religious services on Fridays does not alter the conclusion that he was reasonably accommodated. Daley apparently first received a request for a religious accommodation from McLaughlin in May 2001. As she readily concedes, there subsequently was a five-month delay in the granting of the request due to her inexperience in dealing with such requests and her need to investigate how to proceed. (Ex. CC at 8). In his papers, McLaughlin has not shown that this delay rose to the level of an adverse employment decision, see Joseph, 465 F.3d at 91 (four-month delay in reinstatement due to investigation not an adverse employment decision); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (relatively minor administrative miscues that led to delay in reassigning teacher not an adverse employment action), much less that Daley had any discriminatory animus.

The BOE is therefore entitled to summary judgment with respect to McLaughlin's religious discrimination claim.

IV.     Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment

(Docket No. 34) is granted, and the Clerk of the Court is respectfully requested to close

this case.

SO ORDERED.

Dated:     New York, New York
           January 22, 2008

FRANK MAAS
United States Magistrate Judge

Copies to:

Don A. McLaughlin [Pro Se]
P.O. Box 1964
White Plains, New York  10602

Ivan A. Mendez, Jr., Esq.
Assistant Corporation Counsel
New York City Law Department
Fax: (212) 788-0940